# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 753 DDN |
| | ) | |
| JOHN SHARPE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Before the Court is the motion of defendant John Sharpe for summary judgment. Plaintiff Rodney Cunningham has not filed a response and the time for doing so has expired. The parties have consented to the exercise of plenary authority by a Magistrate Judge under 28 U.S.C. § 636(c). For the reasons discussed below, the Court grants the motion.

Plaintiff, a Missouri state prisoner, seeks relief under 42 U.S.C. § 1983 for his claim that defendant failed to protect him from an attack by a fellow inmate, while defendant was a Missouri correctional officer at a facility in Bonne Terre, Mo. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1343.

## Legal Standard

Summary judgment is appropriate "[i]f there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party." *Shrable v. Eaton Corp.*, 695 F.3d 768, 770-71 (8th Cir. 2012); *see also* Fed. R. Civ. P. 56(a). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden shifts to the non-moving party to demonstrate that disputes of fact exist only after the movant has made its showing. *Id.* It is the nonmoving party's burden to proffer specific factual support by affidavit or other evidence to avoid summary judgment. *Perry v. Martin*, 2013 WL 6331474, at *1 (E.D. Mo. Dec. 5, 2013). Also, pursuant to E. D. Mo. Local Rule 4.01(E), the movant's statement of uncontroverted material facts is deemed admitted unless specifically

controverted by the opposing party. Plaintiff's pro se status does not excuse him from any of these rules. *Willis v. Morgan*, 2016 WL 3458158, at *1 (E.D. Mo. June 24, 2016) (citing *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001)).

However, the Eighth Circuit has decided not to treat a party's lack of response to a motion for summary judgment "as sufficient to dispose of the motion." *Lowry v. Powerscreen USB, Inc.,* 72 F.Supp.2d 1061, 1064 (E.D. Mo. 1999) (citing *Canada v. Union Electric Co.,* 135 F.3d 1211, 1213 (8th Cir. 1997)). Rather, when ruling on an unopposed motion for summary judgment, district courts should "review the facts in a light most favorable to the party who would be opposing the motion." *Id.* The Court should also give the nonmoving party the benefit of any reasonable inferences from those facts. *Perry*, 2013 WL 6331474, at *2 (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir.2005)).

Finally, under Federal Rule of Civil Procedure 56(e)(3), the Court may grant summary judgment only "if the motion and supporting material— including the facts undisputed—show that the movant is entitled to it." *See O'Mara v. Scales Plumbing Co., LLC*, 2018 WL 6248752, at *2 (E.D. Mo. Nov. 29, 2018). Therefore, even though defendant's statement of material facts is unopposed and thereby deemed admitted, the Court must examine the entire record to grant summary judgment. *Id.*

**A.    Undisputed Facts**

In the record before the Court the following facts are not disputed. At all relevant times plaintiff Rodney Cunningham was incarcerated at the Eastern Reception and Diagnostic Correctional Center ("ERDCC"), a reception facility of the Missouri Department of Corrections in Bonne Terre, Mo. (Doc. 29, ¶ 2).

The incident alleged in the complaint occurred on February 13, 2017.  On that day, defendant John Sharpe was a correctional officer at ERDCC and worked in the control center of Housing Unit 6 ("HU 6"). (*Id.* at ¶ ¶ 3, 6, 7). At approximately 6:30 p.m., defendant announced over the intercom that those inmates attending programs should hit their duress buttons, as it was time for the programs release. (*Id.* at ¶ 9.).  In the meantime, inmate Ida Harris asked defendant if he could go outside for a smoke, and defendant allowed it.  (*Id.* at ¶ 10). Harris was assigned as a dorm worker in HU 6, in the C and D wings, and thus he had the freedom to move from wing to

wing to clean. (*Id.* at ¶ 8). At the same time, defendant mistakenly opened plaintiff's door for programs. (*Id.* at ¶ 11). Plaintiff approached the control center to ask defendant what he needed, and then went outside to where inmate Harris was. (*Id.* at ¶ 12). There were no officers in the yard with plaintiff and Harris. (*Id.* at ¶ 13). Defendant went back to the programs release, but when he looked outside and noticed that plaintiff and Harris were engaging in a physical altercation, he immediately called an emergency code and ended the altercation with two other officers. (*Id.* at ¶¶ 14-15).

Defendant issued conduct violations to both plaintiff and Harris due to the altercation. (*Id.* at ¶ 16). At his interview on the conduct violation, plaintiff stated, "I was called out in front of Housing Unit 6 and was forced to defend myself." (*Id.* at ¶ 17). At the disciplinary hearing on February 16, 2017, plaintiff testified that he was called outside, attacked, but was not on any call out. (*Id.* at ¶¶ 18, 19). Plaintiff was found guilty at the hearing, in which evidence of plaintiff's involvement in a physical altercation was presented, but plaintiff did not request any witnesses. (*Id.* at ¶¶ 18, 20).

Plaintiff made an Informal Resolution Request ("IRR") around February 21, 2017, claiming that defendant risked plaintiff's safety by directing him to go outside where inmate Harris was to attack him. (*Id.* at ¶ 22). After the denial of his IRR, he filed both a grievance and a grievance appeal, both of which were denied. (*Id.* at ¶¶ 23-27).

**B. Failure to Protect Claim**

Plaintiff alleges that defendant instigated "and aided the assault upon my person by inmate Ira Harris." (Doc. 1 at 5). According to plaintiff, Harris had a plan to attack him and defendant participated in this plan by unlocking plaintiff's cell door when plaintiff was not on any religious call out and ordering him to meet Harris in the dark, "who was waiting in ambush for [plaintiff]." (*Id.*) In doing this, plaintiff argues defendant exhibited "deliberate indifference and/or reckless disregard for plaintiff's safety by failing to act reasonably in response to danger." (*Id.*).

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, and this duty includes protecting prisoners from attacks by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, the mere occurrence of one inmate's attack on another does not necessarily give rise to an Eighth Amendment claim. *Patterson v.*

3

*Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (citing *Tucker v. Evans,* 276 F.3d 999, 1001 (8th Cir. 2002)). To prevail on an Eighth Amendment claim for a failure to protect, a plaintiff must satisfy: (1) an objective component, *i.e.* whether there was a substantial risk of harm to the inmate, and (2) a subjective component, *i.e.* whether the prison official was deliberately indifferent to that risk. *Patterson,* 902 F.3d at 851 (quotation marks and citations omitted).

A prison official is deliberately indifferent when he or she knew of facts from which a substantial risk of serious harm to an inmate could be inferred, the official actually inferred the risk, and the official failed to take reasonable measures to protect against it. *Farmer,* 511 U.S. at 837-38; *Whitson v. Stone County Jail,* 602 F.3d 920, 923 (8th Cir. 2010). The mere presence of an obvious risk of harm justifies a finding of the subjective component. *Lenz v. Wade,* 490 F.3d 991, 995 (8th Cir. 2007). The requisite state of mind for deliberate indifference is "akin to recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmates." *Id.* Unsupported conjecture or negligence regarding a risk of harm is not sufficient to find deliberate indifference. *Id.* at 996-97. Circumstantial evidence might establish a defendant's actual knowledge if a plaintiff "presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer,* 511 U.S. at 842–43 (internal quotation marks and citations omitted).

Viewed in the light most favorable to plaintiff, the record as a whole does not support the conclusion that defendant was deliberately indifferent to a substantial risk of harm that inmate Harris posed to plaintiff. Most importantly, there is no indication in the record that plaintiff had an antagonistic relationship with Harris prior to the altercation in question. In his deposition, plaintiff denied that he had said anything disrespectful to Harris prior to the incident, only after. (Doc. 29, Ex. A at 19). In the absence of a history between plaintiff and Harris, the risk of substantial harm was neither "longstanding" nor "pervasive." *Farmer,* 511 U.S. at 842-43.

Also, plaintiff stated that his encounter with Harris started as a conversation, and he denied that it started as an argument. (Doc. 29, Ex. A at 19-20). According to plaintiff, Harris stated plaintiff was "getting mouthy with some COs [(correctional officers)]." (*Id.* at 20-21). Plaintiff also denied that they were arguing when Harris uttered these statements. (*Id.* at 20).

4

Plaintiff responded to Harris, "[l]ike what do you mean, yeah, all right…?" and at that point Harris turned around and swung at him. (*Id.* at 21). Plaintiff's own account of the attack indicates that the attack was unanticipated and prompted by Harris' sudden escalation of emotion during the conversation. *See Tucker,* 276 F.3d at 1003 (reversing denial of summary judgment because plaintiff's claim was based on a surprise attack and it was not supported that defendant was deliberately indifferent to a substantial risk of harm).

Plaintiff seems to suggest that he was a likely target of Harris' attack by stating that Harris was trying to extort money from him right before he met Harris outside. (Doc. 29, Ex. A at 31, 34). According to plaintiff, plaintiff and Harris talked through the phone in the middle of the prison wing. In that conversation, Harris said to plaintiff that he had to pay Harris to "stay out" because plaintiff was disrespectful to the prison officers and "[t]he debt needed to be paid." (*Id.*) In addition to a lack of indication that plaintiff and Harris had an antagonistic relationship prior to the attack, plaintiff did not report to defendant that Harris had tried to extort money from him. The Eighth Circuit has declined to find liability when a prisoner suffered a surprise attack from an inmate with whom he had an altercation the day before, when he had not reported the fight to prisoner officers. *Patterson,* 902 F.3d at 851-52. Because plaintiff and Harris did not have a long-standing animosity that defendant could have noticed, and because plaintiff failed to report Harris' attempt to extort money from him, the record as a whole does not permit an inference that defendant had actual knowledge of a substantial risk.

The Eighth Circuit has rejected a finding of actual knowledge even when a plaintiff and his attacker approached a defendant together a few hours prior to the killing, and defendant might have been able to spot a potential risk. In *Tucker,* an attacker and victim approached defendant several hours before the killing and asked defendant the location of Earle, Arkansas. *Tucker,* 276 F.3d at 1001-02. Appellees argued it was possible for the two men to have an argument about its location. *Id.* When assuming they had mutual antipathy towards each other and defendant missed the signal when the question was posed, the Eighth Circuit still held that "it may show that he [defendant] is a bad judge of interpersonal relations," and thus does not rise to the level of constitutional violation. *Id.*

In *Tucker,* two inmates approached defendant together and had an interaction with defendant that could have alerted defendant to a potential risk. *Id.* However, in plaintiff's case, the two men simply engaged in a phone conversation some time prior to the attack. (Doc. 29, Ex.

A at 31, 34). The record does not indicate that the conversation involved any indication of conflict, such as shouting or physical responses that would have put defendant on notice of a potential threat. Because the evidence does not warrant finding of actual knowledge, the record is insufficient to support a conclusion that defendant violated the Eighth Amendment. At most defendant may have been negligent in opening plaintiff's cell door and letting him and Harris outside without supervision, as defendant himself acknowledges. (Doc. 29, Ex. B ¶¶ 4, 8, 14). *See Schofield v. Hopkins,* 491 F. App'x 772, 774 (8th Cir. 2012) (not finding the Eighth Amendment violation when a prison officer, absent knowledge of threat, allowed an unauthorized inmate to enter the laundry area where he attacked plaintiff).

Finally, plaintiff alleges that defendant did Harris a favor by providing access to plaintiff so Harris could attack him. (Doc. 1 at 5). Plaintiff claims the security policy of the prison does not permit Harris to move between different wings of the housing unit without supervision. (Doc. 1 at 5; Doc 29, Ex. A at 14). In his complaint, plaintiff claims, "Sharpe often did favors for Ira Harris. In this instance, it was to have access to me, in order to assault me for a dispute." (Doc. 1 at 5). Also, plaintiff answered in the affirmative to the statement that defendant "allowed Harris to attack" him. (Doc. 29, Ex. A at 14-15). In light of both statements, plaintiff suggests that when defendant did a favor for Harris by opening the cell door of plaintiff and letting Harris smoke outside, defendant should have known that Harris would do something harmful to plaintiff. However, according to the uncontroverted material facts Harris was a dorm worker who had freedom to move between prison wings to clean. (Doc. 29, ¶¶ 8, 10). Also, plaintiff stated he did not know of any other favors defendant did for Harris, nor was defendant known for doing favors for Harris. (Doc. 29, Ex. A at 14).

Plaintiff's allegations are not supported by any evidence that defendant knew Harris would attack plaintiff, still condoned his plan, and did him a favor by opening the cell door of plaintiff and letting Harris smoke outside. His complaint does not allow for an inference of "more than mere possibility of misconduct*." Schofield,* 491 F. App'x, at 774*.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)). Furthermore, defendant promptly intervened to stop the attack as soon as he noticed it by calling an emergency code. (Doc. 29, ¶¶ 15, 16). *Cf. Walton v. Dawson,* 752 F.3d 1109, 1124 (8th Cir. 2014) (concluding the failure to notice and intervene in one-hour-long sexual assault could amount to a failure to protect). The record as a whole

suggests defendant at most acted negligently, which does not amount to a violation of the Eighth Amendment.

### C. Qualified Immunity

Additionally, defendant is entitled to qualified immunity. Qualified immunity is a defense protecting "state officials from civil liability for actions that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Young v. Selk,* 508 F.3d 868, 871 (8th Cir. 2007) (internal quotation marks and citation omitted). Qualified immunity is an immunity from suit, not just a mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 512 (1985). In determining defendant's entitlement to qualified immunity, the Court must conduct a two-step inquiry by determining: "(1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) [whether] the right was clearly established at the time of the deprivation." *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (internal quotation marks and citation omitted).

The Eighth Circuit has consistently held that qualified immunity for prison officials sued for failure to protect is appropriate when the claim arises out of a surprise attack from fellow inmates. *Tucker,* 276 F.3d at 1001. *See also Patterson,* 902 F.3d at 852; *Curry v. Crist,* 226 F.3d 974, 978–79 (8th Cir.2000); *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir.1998); *Prosser v. Ross,* 70 F.3d 1005, 1007 (8th Cir.1995); *Smith v. Marcantonio,* 910 F.2d 500, 502 (8th Cir.1990). As discussed above, defendant did not violate plaintiff's clearly established Eighth Amendment right, so he is entitled to qualified immunity.

### III. ORDER

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendant John Sharpe for summary judgment (Doc. 27) **is sustained.** An appropriate judgment order is issued herewith.

        /s/    David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 22, 2019.